**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glenn Liou,<br><br>    Plaintiff,<br><br>v.<br><br>CyraCom International Incorporated,<br><br>    Defendant. | No. CV-15-01167-PHX-DGC<br><br>**ORDER** |

On March 2, 2016, Defendant CyraCom International, LLC filed a motion for summary judgment. Doc. 50. The motion is fully briefed. Docs. 60; 61. Neither party requested oral argument. The Court will grant Defendant's motion.

**I. Background.**

The following facts are undisputed. Defendant CyraCom International, LLC ("CyraCom") is a privately-held company that provides interpreting services to businesses. Doc. 51-1 at 2, ¶ 2. On August 13, 2012, CyraCom hired Plaintiff Menqiong "Glenn" Liou as a Mandarin interpreter. *Id.* at ¶ 3. When he was hired, Plaintiff signed documents indicating that he agreed to comply with CyraCom's policies and procedures and CyraCom's Interpreter Code of Ethics. *Id.* at 2, ¶ 3; 7-8; 10. CyraCom's Interpreter Code of Ethics requires interpreters to provide "interpretation without comment," where interpreters "render the message in a meaning-for-meaning manner without adding, omitting, or substituting information." *Id.* at 2, ¶ 4; 10; 26, ¶ 3. Plaintiff understood that meaning-for-meaning interpretation was important to CyraCom. *Id.* at 83.

1   CyraCom's interpreter supervisors periodically monitor their interpreters' calls with clients. *Id.* at 64, ¶ 2; 73, ¶ 2. Two of Plaintiff's supervisors, Brian Ko and Julio Noriega, heard him violate the "interpretation without comment" or "meaning-for-meaning" policy ("Policy") on numerous occasions. *Id.* After these incidents, both supervisors provided Plaintiff with counseling and coaching on the Policy. *Id.* During these coaching sessions, Plaintiff expressed to his supervisors his disagreement with the Policy. *Id.* On April 29, 2014, Plaintiff was again heard violating the Policy. *Id.* at 26, ¶ 2. As a result, Plaintiff received a "Needs Improvement" rating based on his lack of compliance with the Policy. *Id.* at 26, ¶ 2; 31; 84.

In May 2014, Plaintiff discussed the "Needs Improvement" rating with Edmundo Alvarez, the CyraCom Call Center Manager. *Id.* at 26, ¶¶ 1-2. Plaintiff told Alvarez that the "Needs Improvement" rating was coded incorrectly, and asked him to rescind it. *Id.* at ¶ 2. Plaintiff also told Alvarez that Plaintiff's supervisors had given him permission to violate the Policy. *Id.* Alvarez investigated this claim and found that Plaintiff had not, in fact, been given permission to violate the Policy. *Id.* at ¶ 4. Plaintiff also argued that he should be given permission to violate the Policy. *Id.* On May 14, 2014, Plaintiff sent Alvarez an email that explained his disagreement with the Policy and argued that interpreters should be permitted to deviate at times from the Policy. *Id.* at 26-27, ¶¶ 4-5; 33-37; 85. Alvarez did not rescind Plaintiff's "Needs Improvement" rating. *Id.* at 27, ¶ 6.

On June 2, 2014, CyraCom posted an internal job opening for a first-line supervisor of CyraCom's Mandarin and Cantonese interpreters ("Supervisor Position"). *Id.* at 3, ¶ 5; 12-15. The Supervisor Position had a number of essential functions, including providing meaning-for-meaning interpreting and complying with CyraCom's policies and procedures. *Id.* at 3, ¶ 5; 13. The job posting also sought candidates who possess certain knowledge, skills, and abilities, including that the candidate be skilled "at communicating, both orally and in writing," and "in establishing and maintaining effective work relationships." *Id.* at 3, ¶ 5; 14.

On June 5, 2014, Plaintiff applied for the Supervisor Position. *Id.* at 39-43. Because only four employees applied for the position, Alvarez interviewed each of the candidates. *Id.* at 27, ¶ 7; 39-43; 45-50; 52-56; 58-62. Each candidate was given an identical application packet, and each was asked identical questions. *Id.* Of the four candidates, Plaintiff was the only interpreter who had received a "Needs Improvement" rating on a recent evaluation and who had expressed disagreement with the Policy. *Id.* at 27-28, ¶ 8. During his interview, Plaintiff focused on the technical aspects of interpreting, rather than management, and "had problems communicating ideas effectively during the interview." *Id.* Alvarez concluded that, of the four candidates, Lily Situ had the best interview and was the most qualified person for the Supervisor Position. *Id.* at 28, ¶ 11. During her interview, Situ "provided specific examples of how she could motivate and coach a team" and "also showed that she was able to communicate more effectively than the other applicants." *Id.* Situ received a higher average rating on the interview than the other three candidates. *Id.* at 43 (Liou: 3/5); 50 (England: 3/5); 56 (Xu: 3/5); 62 (Situ: 4/5). Alvarez selected Situ for the Supervisor Position. *Id.*

On June 26, 2014, Plaintiff sent an email to CyraCom's Vice President, Best Ihegborow, and copying CyraCom's Chief Executive Officer, Jeremy Woan. *Id.* at 3, ¶ 6; 17-18. The subject line was "[t]he employment law expressly prohibits deceitful and unfair hiring practices." *Id.* at 17; 86. In the email, Plaintiff asked Ihegborow to conduct "a thorough investigation" of the hiring process for the Supervisor Position. *Id.* at 17. Plaintiff stated that he had "heard some rumors" that Situ had received extra training before her interview, had been asked different interview questions, and had been generally preferred for the Supervisor Position before the interview. *Id.* at 17-18. Plaintiff stated that this email contained all of his complaints against CyraCom. *Id.* at 86.

Plaintiff's June 26, 2014 email was shared with CyraCom's Human Resources Director, Penie Porter. *Id.* at 2-3, ¶¶ 1, 6. Porter was asked to "investigate and address the selection process" for the Supervisor Position with Plaintiff. *Id.* at 3, ¶ 6. Prior to

1  meeting with Plaintiff, Porter spoke with Alvarez, who told her about Plaintiff's
2  expressed disagreement with the Policy and his assessment of the four candidates. *Id.* at
3  3, ¶ 7; 28, ¶ 12. Porter also spoke with Plaintiff's supervisor, Ko, who explained "that he
4  had spent time with the other three candidates, who were all on his interpreting team, and
5  that Ms. Situ had shown initiative on receiving training and coaching." *Id.* at 3, ¶ 7; 64,
6  ¶ 6.

7  After speaking with Alvarez and Ko, Porter met with Plaintiff to discuss the
8  selection process. *Id.* at 4, ¶ 8. Porter explained to Plaintiff why he was not selected for
9  the Supervisor Position, but he "did not accept [her] explanation and demanded that the
10 decision be reversed." *Id.* Porter then brought up Plaintiff's email questioning the
11 Policy, at which point Plaintiff raised his voice, slammed his fist on the desk, and
12 demanded to speak with Ihegborow. *Id.* Plaintiff left Porter's office. *Id.* Porter went to
13 Alvarez and explained what had happened. *Id.* at 4, ¶ 9; 29, ¶ 13. Alvarez and Porter
14 then summoned Plaintiff to Alvarez's office to discuss the selection process for the
15 Supervisor Position. *Id.* Plaintiff refused to look at or address Porter during the meeting.
16 *Id.* Plaintiff again refused to accept the explanations for why Alvarez had chosen Situ,
17 and left the meeting in the middle of the conversation. *Id.* Both Alvarez and Porter
18 believed that Plaintiff's "behavior was defiant, unprofessional, and unacceptable." *Id.*

19 After meeting with Alvarez and Porter, Plaintiff sent a second email to Ihegborow
20 and Woan. *Id.* at 4, ¶ 10; 20-21. Plaintiff stated that he had met with Porter twice and
21 thought "she was completely out of it." *Id.* at 20. Plaintiff complained that Porter was
22 not focusing on his complaints about the selection process, and that she had "failed to do
23 her homework." *Id.* Plaintiff said Porter needed to "dig in for more facts" about whether
24 Ko had shown preferential treatment in preparing Situ for the interview. *Id.* at 20-21.

25 Alvarez and Porter met with Plaintiff's direct supervisor, Julio Noriega. *Id.* at 4-5,
26 ¶ 11; 29, ¶ 14; 73, ¶ 4. They discussed Plaintiff's performance and recent behavior. *Id.*
27 After this meeting, Porter emailed Woan and copied Ihegborow and Alvarez. *Id.* at 23-
28 24. Porter summarized the meetings with Plaintiff and with Noriega. *Id.* Porter also

recommended that "Corrective Action" be taken. *Id.* at 24. Porter and Alvarez ultimately recommended that Plaintiff be terminated. *Id.* at 4-5, ¶ 11; 29, ¶ 14. Ihegborow agreed, and CyraCom terminated Plaintiff on June 30, 2014. *Id.* at 4-5, ¶ 11; 29, ¶ 14. Prior to his termination, Plaintiff did not mention age discrimination in his meetings with Porter or his emails to Ihegborow and Woan. *Id.* at 5, ¶ 12; 86.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Analysis.

CyraCom seeks summary judgment on Plaintiff's age discrimination and unlawful retaliation claims. CyraCom also objects to Plaintiff's statement of facts, and seeks to recover its attorneys' fees under A.R.S. § 12-341.01.

### A. Plaintiff's Statement of Facts.

CyraCom objects to Plaintiff's statement of facts on a number of grounds. Doc. 61 at 1-3, 9. CyraCom objects to Plaintiff's failure to include a controverting statement of facts as required by LRCiv 56.1(b). *Id.* at 1-2. Because of this failure, CyraCom argues that all of its facts are deemed admitted, and that it is entitled to

summary judgment on this basis alone. *Id.* at 2. CyraCom also identifies a number of paragraphs in Plaintiff's statement of facts that contain several facts, assertions not supported by admissible evidence, or improper argument, or that lack proper foundation. *Id.* at 9. The Court also notes that Plaintiff's statement of facts did not comply with the Court's case management order, which imposed a ten-page limit. Doc. 31 at 3, ¶ 7(c). Although the Court warned Plaintiff of the consequences of failing to comply with the Court's orders and applicable rules (*see* Doc. 55), the Court will not grant CyraCom summary judgment on this basis. At the same time, however, the Court will not find CyraCom's facts to be controverted unless Plaintiff provided admissible evidence to support his assertions.

### B. Age Discrimination.

Plaintiff alleges that CyraCom's failure to promote him to the Supervisor Position was the result of age discrimination. CyraCom seeks summary judgment on two grounds: (1) Plaintiff failed to establish a prima facie case of age discrimination; and (2) CyraCom had a legitimate non-discriminatory basis for deciding not to hire Plaintiff for the Supervisor Position. Doc. 50 at 6-9.

To establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must establish that: (1) he was a member of a protected class, ages 40-70; (2) he applied for and was qualified for a position that was open to applicants; (3) the employer declined to hire him; and (4) the job was awarded to a substantially younger applicant with equal or inferior qualifications. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (citations omitted). Once the prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for awarding the job to a younger applicant. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer articulates a nondiscriminatory reason, the burden shifts back to the plaintiff to produce evidence that the employer's stated reason was pretextual. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th

1 Cir. 1998) (citation omitted). The plaintiff must establish that age was the "but for"
2 cause of the adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009).

### 1.     Prima Facie Case.

CyraCom asserts that Plaintiff failed to provide evidence that he had equal or superior qualifications to Situ. Doc. 50 at 6-7.

CyraCom provides the following undisputed evidence to support this assertion. Compliance with and enforcement of the Policy is an essential function of the Supervisor Position. Doc. 51-1 at 3, ¶ 5; 13. Plaintiff had expressed disagreement with the Policy, both in an email and while being coached by supervisors. *Id.* at 33-37; 64, ¶ 2; 73, ¶ 2. Shortly before applying for the Supervisor Position, Plaintiff received a "Needs Improvement" rating for violating the Policy. *Id.* at 26, ¶ 2; 31; 84. Plaintiff was the only candidate for the Supervisor Position who had received a "Needs Improvement" rating. *Id.* at 27-28, ¶ 8. Alvarez concluded that Lily Situ had performed the best of the four candidates. *Id.* at 28, ¶ 11. Situ had provided specific examples of how she could motivate and coach a team and had showed that she was able to communicate more effectively than the other applicants. *Id.* Plaintiff had difficulty communicating ideas effectively during the interview. *Id.* at 27-28, ¶ 8. Situ also received a higher average interview score than Plaintiff or the other two applicants. *Id.* at 43; 50; 56.

Although Plaintiff disputes much of CyraCom's evidence in his papers, he failed to provide any admissible controverting evidence. Plaintiff asserts that he was given permission to violate the Policy by his former supervisor, Sue Deng. Doc. 60 at 2; 11-12, ¶ 7. But Plaintiff fails to provide any admissible evidence to overcome the evidence that supervisors Ko and Noriega had not given him permission to violate the Policy. Doc. 51-1 at 26, ¶ 4. Plaintiff contends that he did not, in fact, receive a "Needs Improvement" rating for violating the Policy. Doc. 60 at 2, 8-10, ¶ 5. But Plaintiff admitted in his deposition that he received the rating because he violated the Policy. Doc. 51-1 at 84. Plaintiff argues that if he did receive such a rating, it was illegitimate and should be reversed. Doc. 60 at 8-10, ¶ 5. CyraCom produced evidence that Plaintiff asked Alvarez

- 7 -

to rescind the rating, and that Alvarez investigated the rating and determined that it should be upheld. Doc. 51-1 at 26-27, ¶¶ 1-2, 4, 6. Plaintiff takes issue with the import of the "Needs Improvement" rating and his disagreement with the Policy, arguing that they are discriminatory. Doc. 60 at 13-14, ¶ 8. CyraCom produced evidence to show that compliance with and enforcement of the Policy is an essential function of the Supervisor Position. Doc. 51-1 at 3, ¶ 5; 13. Plaintiff maintains, without providing any admissible evidence, that he was not asked the same questions as Situ. Doc. 60 at 2-3; 15-18, ¶¶ 10-15. Alvarez provided a sworn statement that he asked each of the four candidates the same questions. Doc. 51-1 at 27, ¶ 7. Plaintiff's unsubstantiated statements and arguments are insufficient to overcome CyraCom's undisputed facts.

Plaintiff also contends that Situ was not qualified to be an interpreter at CyraCom because she did not have one year of experience. Docs. 60 at 7, ¶ 3; 60-1 at 24. Whether Situ was eligible to be an interpreter at CyraCom is not the proper inquiry. Instead, the issue is whether Situ was as qualified or less qualified for the Supervisor Position than Plaintiff. The Supervisor Position did seek candidates with two years of professional interpreter experience, which Situ lacked. Doc. 51-1 at 14, 59. But Plaintiff and the other two candidates also fell short of this requirement. *Id.* at 40, 46, 53. If anything, this shows that CyraCom did not strictly enforce the length-of-experience requirement. It does not establish that Plaintiff had equal or superior qualifications to Situ.

Plaintiff has failed to present sufficient evidence for a reasonable jury to find that he had equal or superior qualifications to Situ. Because this is an essential element of his prim facie case of age discrimination, the Court will enter summary judgment on the age discrimination claim. *Celotex*, 477 U.S. at 322.

### 2.  Legitimate, Nondiscriminatory Basis.

The undisputed evidence shows that CyraCom had a legitimate, nondiscriminatory basis for promoting Situ over Plaintiff, and Plaintiff has not presented evidence from which a reasonable jury could find that the basis was pretextual. This too supports summary judgment in favor of CyraCom.

### C. Unlawful Retaliation.

Plaintiff alleges that CyraCom's decision to terminate his employment was unlawful retaliation for Plaintiff's request that CyraCom investigate the hiring of Situ for the Supervisor Position and for his age discrimination claim. CyraCom seeks summary judgment on two grounds: (1) CyraCom had a legitimate, nonretaliatory basis for terminating Plaintiff; and (2) Plaintiff cannot show that this basis was a pretext for unlawful retaliation. Doc. 50 at 9-10.

To establish a prima facie case of unlawful retaliation, an employee must establish that (1) the employee engaged in a protected activity; (2) the employer took an adverse employment action against the employee; and (3) the employer would not have taken the adverse employment action but for a design to retaliate. *Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2535 (2013) (clarifying that employee must show "but for" causation). If the employee establishes a prima facie case of unlawful retaliation, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions. *Id.* at 954. If the employer articulates such a reason, the employee bears the burden of producing evidence to establish that the employer's proffered reason was merely a pretext for a retaliatory motive. *Id.*

#### 1. Legitimate, Nonretaliatory Basis.

CyraCom contends that Plaintiff's insubordinate and unprofessional behavior constitutes a legitimate, nonretaliatory basis for terminating Plaintiff's employment. Doc. 50 at 10.

CyraCom provided the following undisputed evidence. After he was informed that Situ had been selected for the Supervisor Position, Plaintiff emailed CyraCom executives and requested an investigation of the hiring process. Doc. 51-1 at 3, ¶ 6; 17-18. Porter was tasked with conducting the investigation. *Id.* at 3, ¶ 6. Porter spoke with Alvarez and Ko, and then met with Plaintiff to discuss her investigation and findings. *Id.* at 4, ¶¶ 7, 8. During the meeting, Plaintiff did not accept Porter's explanation. Instead,

he became agitated, raised his voice, slammed his fist on the desk, demanded to speak with CyraCom executives, and abruptly departed. *Id.* Porter went to Alvarez and explained what had occurred. *Id.* at 4, ¶ 9; 29, ¶ 13.

Porter and Alvarez summoned Plaintiff for a second meeting. *Id.* During this meeting, Plaintiff refused to address or look at Porter. *Id.* Plaintiff again refused to accept the explanation for why Situ had been chosen for the Supervisor Position, and he abruptly departed. *Id.* Plaintiff sent a second email to CyraCom executives demanding an investigation into the hiring process. *Id.* at 4, ¶ 10; 20-21. Porter and Alvarez discussed Plaintiff's behavior with Plaintiff's direct supervisor. *Id.* at 4-5, ¶ 11; 29, ¶ 14; 73, ¶ 4. Porter reported Plaintiff's behavior to CyraCom executives. *Id.* at 23-24. Porter and Alvarez ultimately recommended Plaintiff's termination. *Id.* at 4-5, ¶ 11; 29, ¶ 14.

Although Plaintiff disputes much of CyraCom's evidence in his papers, he has failed to provide any admissible controverting evidence. Plaintiff states that he never had any issues of professionalism with one of his supervisors, Julio Noriega. Doc. 60 at 3. Even if this is true, it does not bear on the events that transpired after he was denied the Supervisor Position. Plaintiff claims that, during his meeting with Porter, he "acted in a calm and professional manner. . . . as a prudent professional would." *Id.* at 3-4; 19-22, ¶¶ 17-20. In fact, Plaintiff's response actually accuses Porter of losing her composure during the meeting, stating "[o]ut of nowhere she flew to a rage, lost her composure, and yelled 'If you walk out of my office, you are fired.'" *Id.* at 19-20, ¶ 18. Properly presented, this could be sufficient to raise a genuine issue of disputed material fact, but Plaintiff failed to provide any admissible evidence to support this assertion.

Plaintiff also asserts that "Defendant made unsubstantiated claims without an[y] evidence." *Id.* at 4. As an example, Plaintiff argues that CyraCom failed to produce phone recordings to prove its claim that he violated the Policy. *Id.* CyraCom provided admissible evidence to prove this assertion when it submitted the affidavits of Brian Ko and Julio Noriega. Doc. 51-1 at 64, ¶ 2; 73, ¶ 2. Affidavits may be used to establish that there is no genuine dispute of material fact in support of a summary judgment motion.

*See* Fed. R. Civ. P. 56(c)(1)(A). Plaintiff's assertion that CyraCom made unsubstantiated claims is without merit.

CyraCom has produced undisputed evidence that it had a legitimate, nonretaliatory basis for terminating Plaintiff. The burden therefore shifts to Plaintiff to prove that there is a genuine dispute of material fact that must be resolved at trial as to whether CyraCom's basis for terminating Plaintiff was a pretext.

### 2. Pretext.

Plaintiff attempts to dispute CyraCom's reasons for terminating him by presenting his version of events – dubbed "the hiring plot" – in which Situ was groomed for the Supervisor Position before CyraCom even began soliciting applications for the position. Doc. 60 at 25-26, ¶ 23. According to Plaintiff, CyraCom's basis for terminating his employment was pretextual because "Defendant was not willing to accept and deal with Plaintiff's age discrimination claim and to investigate the hiring plot." *Id.* at 22, ¶ 20. But Plaintiff failed to produce any evidence to support these assertions. Based on the undisputed evidence produced by CyraCom, the Court concludes that no reasonable jury could find for Plaintiff on this issue. CyraCom is therefore entitled to summary judgment on Plaintiff's unlawful discrimination claim. *Celotex*, 477 U.S. at 322.

### D. Attorneys' Fees.

CyraCom requests attorneys' fees under A.R.S. § 12-341.01. Docs. 50 at 11; 61 at 9. Arizona courts have declined to award attorneys' fees in the employment context when the action "sounded in tort and not contract," as in the case of an age discrimination or wrongful termination claim. *See Thompson v. Better-Bilt Aluminum Prods. Co.*, 927 P.2d 781, 790 (Ariz. Ct. App. 1996) (citing *Morris v. Achen Constr. Co., Inc.*, 747 P.2d 1211, 1213 (Ariz. 1987)). For this reason, and because Plaintiff is proceeding pro se, the Court exercises its discretion to decline an award of fees.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 50) is **granted**.
2. The Clerk of Court shall enter judgment accordingly.

Dated this 20th day of May, 2016.

_____
David G. Campbell
United States District Judge